# In the United States Court of Federal Claims

No. 03-2272 T
(Filed: December 5, 2011)

```
*************************************
                                    *
ROBERT G. MARTIN AND                *
BERNICE V. MARTIN,                  *
                                    *
              Plaintiffs,           *     AMCOR; TEFRA;
                                    *     Reconsideration;
       v.                           *     No Intervening Change in
                                    *     Controlling Legal Authority
THE UNITED STATES,                  *
                                    *
              Defendant.            *
                                    *
*************************************
```

*Thomas E. Redding*, Redding & Associates, P.C., Houston, Texas, for Plaintiffs.

*Christopher S. Dove*, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for Defendant.


**DAMICH**, Judge:

## OPINION

Pending in this AMCOR tax case is Plaintiffs' motion for reconsideration, filed August 5, 2011, regarding certain limitations and penalty interest claims. In their motion, Plaintiffs first question whether these claims were reinstated when final judgment against them was vacated on July 1, 2008. If their claims were not reinstated, they question whether the decision in the test case on these claims, *Prati v. United States*, 81 Fed. Cl. 422 (2008) ("*Prati I*"), constitutes the law of the case in their case. Even if their claims were dismissed based on the decisions in *Prati*, Plaintiffs here seek reconsideration on the grounds of "intervening controlling authority, new evidence, and need to avoid manifest injustice."

For the reasons stated below, Plaintiff's motion for reconsideration is denied.

I.   Background

Plaintiffs seek a tax refund relating to their investment in certain limited partnerships that were part of a group of similarly structured partnerships managed by American Agri-Corp, Inc.

("AMCOR") in the 1980s.  The partnerships were designed "to generate a large loss in the first year, allowing each partner to claim a tax deduction averaging twice the size of his investment, with the excess loss to be recaptured in subsequent years."  *Prati v. United States*, 603 F.3d 1301, 1302 (Fed. Cir. 2010) ("*Prati III*").  In the late 1980s, however, the AMCOR partnerships were audited and investigated by the Internal Revenue Service ("IRS"), which subsequently issued Final Partnership Administrative Adjustments ("FPAAs") disallowing the deductions.  The AMCOR partnerships' members were ultimately assessed additional taxes and in some cases penalty interest, for which they seek (or have sought) refunds in the Court of Federal Claims.

More than 100 AMCOR tax refund cases were eventually filed in this court.  The AMCOR plaintiffs, represented by the same counsel, and the Government jointly filed notice with the court that the cases here were indirectly related.  The parties selected three representative cases by which to resolve common issues of law and fact.  These representative cases were *Isler*, Case No. 1-344; *Prati*, Case No. 2-60; and *Scuteri*, Case No. 1-358.

The Martins' complaint asserted four categories of claims: 1) that the IRS's assessment of taxes due was made after a limitations period, based on 26 U.S.C. § 6501, had expired (the "limitations" or "untimely assessment" claim); 2) that the IRS had improperly imposed a penalty interest rate under former 26 U.S.C. § 6621(c) (the "penalty interest" or "tax-motivated ('TMI') refund" claim); 3) that interest should have been abated under 26 U.S.C. § 6404(e) (the "abatement" claim); and 4) that the IRS may have backdated assessments.  In their instant motion for reconsideration, the Plaintiffs note that the United States Supreme Court has held that the Court of Federal Claims has no jurisdiction over § 6404(e) claims, *Hinck v. United States*, 550 U.S. 501 (2007) and that therefore these claims are no longer before this court.  In addition, on August 5, 2011, the Plaintiffs voluntarily dismissed their backdated assessment claims.

Thus, the only claims remaining – and the subject of the motion for reconsideration – are their limitations and penalty interest claims.

II.  Procedural Posture of This Case

Most of the AMCOR cases in the Court of Federal Claims eventually were transferred to, or originally assigned to, Judge Lawrence Block.  Pursuant to a chart jointly proffered by the parties, the *Prati* case was deemed by the court as representative of the limitations and penalty interest claims, shared by 76 of the other AMCOR cases.  This group of 77 cases were not, however, formally consolidated on the court's docket.

On April 16, 2008, Judge Block issued his opinion in *Prati*, 81 Fed. Cl. 422 (2008), granting the Government's motion to dismiss for lack of jurisdiction.  The court first noted that § 7422(h) of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") deprives courts of jurisdiction to hear a partner's refund claim where the refund is "attributable to partnership items."  *Id*. at 429.  It then held that

> Whether categorized as a 'partnership item' or as an 'affected item,' the Court is without jurisdiction to adjudicate the statute of limitations issue plaintiffs raise in this partner-level proceeding. This is because any resulting refund here would be 'attributable to' partnership items within the meaning of § 7244(h) . . .

*Id*. at 433.

With respect to the penalty interest issue, the court noted the application of former § 6621(c), which imposed a 120 percent interest rate as a penalty for a taxpayer's substantial underpayment attributable to "tax-motivated transactions." *Id*. at 437. The definition of "tax motivated transaction" included "any sham or fraudulent transaction." *Id*. at 438. Because the determination of a sham or fraudulent transaction "must be done on the partnership level," *id*., and because the plaintiffs failed to challenge the sham transaction allegations in the partnership proceeding before the Tax Court, "they cannot now be heard on this issue. This Court simply has no jurisdiction." *Id*. at 439.

Judge Block noted that the 76 other cases presented factual allegations "virtually identical to the named representative case." *Id*. at 423 n.2 (listing the 76 cases). Accordingly, in granting the Government's motion to dismiss and denying the Pratis' motion for summary judgment, he also "ORDERED that all 76 other related cases cited in footnote 2 of this opinion are hereby DISMISSED for lack of jurisdiction." *Id*. at 440 (emphasis in original).

Judgment was entered on the docket of *Prati*, as well as separately in all of the other 76 cases on April 18, 2008. *See, e.g., Martin*, No. 03-2272, Docket No. 13 ("JUDGMENT entered, pursuant to Rule 58, that all claims by the plaintiffs are dismissed for lack of jurisdiction.").

On May 2, 2008, however, the Martins filed a motion to vacate the judgment entered against them as a result of the *Prati I* decision. They acknowledged the dismissal of all 77 cases covered by the *Prati* decision, but argued that final judgment against them was inappropriate because they had also pled an individual issue – the then-extant backdated assessment claim – that was not common to the *Prati I* group of 77 cases (or addressed therein). "Therefore, by resolving the § 6229(a) [limitations] and § 6621(c) [penalty interest] issues the *Prati* opinion resolved all issues in most, but not all, of the 77 cases. In a small number of those cases the partner also pled issues arising from his individual circumstances." Pls.' Mot. to Vacate J. at 2.

The Martins' motion to vacate judgment also noted that a motion for reconsideration had been filed in *Prati* on April 30, 2008. In that motion, the Pratis requested that their motion for reconsideration be deemed as filed in each of the 77 cases encompassed by Judge Block's decision. On June 6, 2008, the court acceded to that request: "Accordingly, it is ORDERED that the MOTION FOR RECONSIDERATION filed in the instant matter IS DEEMED TO HAVE BEEN FILED IN THE OTHER 76 CASES listed in footnote one, page one, of said motion." *Prati*, Case No. 2-60, Docket No. 93 (emphasis in original). Judge Block's order was entered in

*Prati*, although no corresponding entry of the motion for reconsideration was made, however, on the docket of the other 76 cases.

On June 18, 2008, while a decision on reconsideration was still pending in *Prati*, the Martins then moved, via a "Motion to Perfect the Record," that the *Prati* motion for reconsideration and the *Prati* order deeming the reconsideration motion to have been filed in the other 76 cases be included in the record of their case "to reflect that a timely motion for reconsideration was deemed filed in this case."  Pls.' Mot. to Perfect Record.

On July 1, 2008, Judge Block issued his decision on the Pratis' motion for reconsideration.  *Prati v. United States*, 82 Fed. Cl. 373 (2008) ("*Prati II*").  He noted that the *Prati I* decision applied to all of the 77 cases.  "For efficiency sake, these cases were treated together – although never formally consolidated or combined – for the limited purpose of addressing the common legal issues in the pending motions."  *Id*. at 374.  He also noted that the motion for reconsideration applied to each of those cases as well.  *Id*.  He further acknowledged that, in 15 of the 77 cases, motions to vacate judgment had been filed, based on unresolved "partner-specific" claims.  Because the parties had reprised arguments already decided by the court, Judge Block denied reconsideration: "Ultimately, plaintiffs did not identify an intervening change in the controlling law, bring forth new evidence that was shown to be previously unavailable, nor did they show in their motion that reconsideration is necessary to prevent manifest injustice."  *Id*. at 377.

While he denied reconsideration "in each of the 77 cases covered by the *Prati* decision," he also ruled that "the judgments in the 15 cases listed in footnote 4 of this Order are VACATED for the limited purpose of allowing plaintiffs to pursue any unresolved, case-specific claims that may still be outstanding."  *Id*. at 379.  The Martins were among those 15 cases.  Judge Block was emphatic, however, that, beyond the case-specific claims, "[t]he Court is not reconsidering its opinion in *Prati* – the opinion remains the law in each case."  *Id*.

Accordingly, Docket No. 13 in the Martins' case, in which judgment had been entered on April 18, 2008, dismissing their claims for lack of jurisdiction, was amended by the notation: "[VACATED BY 07/01/08 ORDER]."  A corresponding but unnumbered docket entry was made on July 1, 2008: "Case Reopened per Order of 07/01/08 in Case 02-60 T."

In a Joint Status Report in *Isler*, the parties delineated the case-specific issues that remained in the handful of cases as to which judgment had been vacated in *Prati II*.  "The following list enumerates the 15 cases in alphabetical order, and comprehensively identifies all issues plaintiffs allege survived the Court's *Prati* decision and the paragraphs of the complaint wherein plaintiffs claim the alleged issues are pleaded."  *Isler*, Case No. 01-344, Docket No. 137 (October 24, 2008).  The Martins' only remaining issues were the backdated assessment claims.  The *Isler* parties also requested that those cases, including the Martins', be stayed pending the outcome of appeals to the Federal Circuit in *Prati* and in *Keener*, another indirectly-related AMCOR case.

-4-

On January 8, 2009, the Federal Circuit affirmed the decision of the trial court in *Keener* dismissing plaintiffs' claims for lack of jurisdiction.  *Keener v. United States*, 551 F.3d 1358 (Fed. Cir. 2009).  Similarly, on May 5, 2010, the appellate court affirmed Judge Block's decision in *Prati*.  *Prati v. United States*, 603 F.3d 1301 (Fed. Cir. 2010) ("*Prati III*") (consolidated on appeal with *Deegan v. United States*).  On January 10, 2011, the Supreme Court denied the Pratis' petition for a writ of certiorari.  On February 2, 2011, the Martins (and the similarly situated plaintiffs in other AMCOR cases) moved to transfer their case to Judge Charles Lettow of this court in order to be consolidated for "a single resolution of their common issues as well as any case-specific claims and issues."  Pls.' Mot. to Transfer at 1.  Judge Block denied the motion to transfer on March 29, 2011, and attached to his order denying the motion a copy of an order entered on the same date in *Isler*, Docket No. 161, in which he expanded on the reasoning for denying transfer.

In the *Isler* order, Judge Block explained,

> [W]ith respect to the fourteen cases at issue here, the court need not address the merits of plaintiffs' arguments for consolidation or transfer because the arguments' fundamental premise is false.  Simply put, the claims that plaintiffs assert to be common to these fourteen cases are claims that the court has already dismissed for lack of jurisdiction.  In particular, plaintiffs' refund claims under § 6501 and § 6621 – the two types of claim that plaintiffs now identify as purportedly common to the fourteen cases, see 2011 JSR at 2 – are precisely the claims that the court dismissed in *Prati I.*

> The court's subsequent order to vacate judgment in the fourteen cases did not, as plaintiffs seem to assume, vacate the dismissal of these common claims. . . .

> Accordingly, whatever merit plaintiffs' arguments may have regarding a conflict between the Federal Circuit's panel decision in *Prati* and *Jade Trading*, these are arguments to be made to the Federal Circuit on appeal, once the taxpayer-specific claims are resolved and final judgment is reentered in these fourteen cases.  In further proceedings before this court, however, plaintiffs may not relitigate claims that were fully litigated more than three years ago and were dismissed by the court for lack of jurisdiction.  That dismissal, it bears repeating, stood undisturbed upon reconsideration. . . .

> [O]nly taxpayer-specific claims remain unresolved . . .

*Isler*, Docket No. 161 (March 29, 2011) (internal citations omitted).

Because only case-specific issues remained, on March 31, 2011, the instant case and the other cases like it were re-assigned among other judges of this court for resolution of their individual issues.  Since then, as noted above, the Martins have withdrawn their individualized, backdated assessment claims.

III. Discussion

    A.     Dismissal of the Martins' Common Claims Not Vacated

It is clear to this court not only that Judge Block reinstated the Martins' case solely to the extent of their case-specific claims, but also that the Martins themselves acquiesced in this understanding and outcome.  In their effort to salvage all of their original claims, they make finely-drawn, hair-splitting, but unavailing observations about the docket entries, or the lack thereof, in the amalgam of their specific AMCOR case and the lead cases of *Prati* and *Isler*. They note, for example, that their complaint had never been formally consolidated with the *Prati* case.  They note that the judgment of dismissal entered in their case on April 18, 2008, by virtue of the *Prati I* decision, was amended merely as "VACATED" pursuant to the July 1, 2008, order on reconsideration in *Prati II*.  They argue that, because the July 1, 2008, entry in their docket merely recited "Case Reopened per Order of 07/01/08 in Case 02-60 T," therefore their case was reopened for all purposes.  These docket-related arguments, however, are no more than quibbles, stemming from the ministerial difficulties in maintaining the docket entries in a host of cases in a representative-case scenario.  The Martins certainly were not misled as to the intent, scope, and effect of Judge Block's decisions and orders in *Prati I* or *Prati II*.  For instance, even though Judge Block had already deemed the *Prati* motion for reconsideration as filed in the Martins' case, the Martins themselves moved to reflect on their case docket the same motion for reconsideration of *Prati I* by their "motion to perfect the record."

Neither in their motion to vacate judgment nor in their adoption of the *Prati* motion to reconsider did the Martins raise any arguments about the limitations or penalty interest claims distinct from those raised by the Pratis.  Indeed, in their motion to vacate judgment, the Martins acknowledged that "by resolving the § 6229(a) and § 6621(c) issues the *Prati* opinion resolved all issues in most, but not all, of the 77 cases," excepting only their case-specific, backdated assessment claims (which have now been withdrawn).

The Martins quibble further about the impact of Judge Block's March 29, 2011, denial of their motion to transfer, with its reference to and attachment of the *Isler* Order of the same date. They argue that the *Isler* order was merely referenced but not actually filed in the Martins' case. It was therefore not the law of *their* case, they aver, and its reasoning not binding.

Having proffered the *Prati* case as representative of their claims regarding limitations and penalty interest, having moved to vacate final judgment against them only on the grounds that they had also raised a separate, unresolved issue, having joined in the motion to reconsider the *Prati I* decision, and having waited on the sidelines while plaintiffs with non-case specific claims in the other cases covered by *Prati I* unsuccessfully pursued appeals to the Federal Circuit and sought certiorari to the Supreme Court, the Martins now propose that this court give them a fresh start.

This court finds to the contrary and holds that, pursuant to *Prati I*, the Martins' claims regarding limitations and penalty interest were dismissed for lack of jurisdiction and that, pursuant to *Prati II*, those claims were denied reconsideration and not reinstated when judgment against them was vacated for the limited purpose of pursuing their case-specific claims.

B.     Reconsideration of *Prati I* Not Warranted

Alternatively, the Martins ask this court, pursuant to Rules 54(b) and 59(a)(1) of the Rules of the Court of Federal Claims ("RCFC"), to reconsider the *Prati I* decision as it applies to them.

These rules articulate the understanding that courts possess inherent authority to modify interlocutory orders prior to the entering of final judgment in a case.  *See Wolfchild v. United States*, 68 Fed. Cl. 779, 784-85 (2005).  The grounds for a court's exercise of its authority to reconsider, in departing from the law of the case, include the discovery of new or different material evidence not presented in an earlier decision, an intervening change in controlling legal authority, or when a prior decision is clearly incorrect and would work a manifest injustice.  *Id*. at 785 (citing *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed. Cir. 2001)).

The standard for reconsideration of an interlocutory order under RCFC 54(b) and 59(a)(1) have been described as less "rigorous" than those, for example, applicable to final judgments under RCFC 59(e).  *Id*. at 784.  Reconsideration under RCFC 54(b) is available "as justice requires."  *See L-3 Communs. Integrated Sys., L.P. v. United States*, 98 Fed. Cl. 45, 48 (2011) (citing *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004).  While the threshold for reconsideration under RCFC 54(b) is imprecise, it certainly "leaves within [its] ambit . . . a good deal of space for the Court's discretion."  *Cobell*, 224 F.R.D. at 272.  The district court in *Cobell* explained that "asking 'what justice requires' amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances."  *Id*.

Despite the flexible standards governing reconsideration herein and the discretion afforded the trial court, *see Alpha 1, L.P. ex rel. Sands v. United States*, 86 Fed. Cl. 568, 571 (2009), reconsideration is "not intended, however, to give an 'unhappy litigant an additional chance to sway' the court."  *Matthews v. United States*, 73 Fed. Cl. 524, 525 (2006) (quoting *Froudi v. United States*, 22 Cl. Ct. 290, 300 (1991)).  Nor is it availing, under the guise of reconsideration, to raise an issue for the first time that was available to be litigated earlier in the

case. *Id*. at 526; *Gelco Builders and Burjay Constr. Corp. v. United States*, 177 Ct. Cl. 1025, 1036-37 n.7 (1966) ("Litigants should not, on a motion for reconsideration, be permitted to attempt an extensive re-trial based on evidence which was manifestly available at the time of the hearing.").

Despite the somewhat confused procedural posture of the Martins' case vis-a-vis the representative cases of *Prati* and *Isler*, it is difficult to conclude that denial of reconsideration would work a manifest injustice.

They argue that they should be given the opportunity, heretofore denied them, to present their arguments and their facts. "[T]he Martins' facts and arguments relevant here have never been addressed in any of [the other AMCOR-related cases] because they have never been consolidated with any other suit before this Court." Pls.' Reply to Resp. to Pls.' Mot. Recons. at 10 (emphasis in original). They also challenge Judge Block's assertion in *Prati I* that the 76 other cases covered by the judgment of dismissal in that opinion "present factual allegations virtually identical to the named representative case." *Prati I*, 81 Fed. Cl. at 423. The application of the *Prati I* decision to their case was an "error of apprehension" in that they had never "waived or failed to reserve their right to conduct discovery to establish that their facts distinguish them from the representative case." Pls.' Mot. Recons. at 19.

Accompanying their motion for reconsideration is an affidavit from Frederick H. Behrens, the Tax Matters Partner ("TMP") of most of the AMCOR partnerships. His affidavit is presented in support of their argument that their claim presents factual and legal grounds distinct from the other AMCOR cases. In particular, with respect to their penalty interest claim, they seek the opportunity to argue that "in TEFRA-related refund suits where the assessment was based on a partnership-level Tax Court decision, *res judicata* is a threshold issue that must be resolved *before* the refund court addresses whether §7422(h) bars exercise of its existing 28 U.S.C. §§ 1346(a) and 1491(a) refund jurisdiction." *Id*. at 27 (emphasis in original).

As regards their limitations claim, they assert that *Prati III* is in conflict with the Federal Circuit's prior decision in *Jade Trading LLC v. United States*, 598 F.3d 1372 (Fed. Cir. 2010). They argue that *Jade Trading* articulated that the § 6501(a) limitations period claim was a non-partnership-item element that could not have been raised in the partnership-level suits at the Tax Court. Prior to 1997, before Congress amended § 6226(d)(1), they argue, partners with expired assessment deadline claims were precluded from participating in the partnership-level actions in that regard. "*Prati III* never identifies the Tax Court's authority to ignore pre-1997 § 6226(d)(1)(B) or any pre-1997 case where the Tax Court allowed partners to participate to raise any *non*partnership-item element of their limitations period, including § 6501(a)." Mot. Recons. at 36 (emphasis in original). They further argue that subsequent Supreme Court decisions in *Henderson v. Shinseki*, 131 S.Ct. 1197 (2011), and *United States v. Tohono O'Odham Nation*, 131 S.Ct. 1723 (2011), clearly instruct that the *Prati III* court lacked authority to ignore the jurisdictional constraints of the pre-1997 § 6226(d)(1)(B).

Plaintiffs' arguments in the instant motion for reconsideration must be viewed, however, in the context of the representation in their 2008 motion to vacate the judgment in *Prati I* that "by resolving the § 6229(a) and § 6621(c ) issues the *Prati* opinion resolved all issues in most, but not all, of the 77 cases." Pls.' Mot. to Vacate at 2. The *only* exception that the Martins raised then was that their complaint still presented the unresolved backdated assessment claims. It bears noting that, although they had the opportunity at that time, the Martins did not make any argument that their facts were materially different from those presented by the Pratis. Thus, had it not been for their case-specific claims, which have now been withdrawn, the Martins would have been in the same posture as the other cases encompassed by Judge Block's dismissal for lack of jurisdiction in *Prati I*. The Pratis and 54 other AMCOR partners in that group of 77 appealed to the Federal Circuit, which accepted *Prati* and *Deegan* as representative cases. Judge Block's dismissal was affirmed on appeal in *Prati III*. The taxpayers in the rest of that group on appeal then sought to distinguish their circumstances, but their dismissals were all summarily affirmed. *See Keefe v. United States*, 407 Fed. Appx. 420 (Fed. Cir. 2010) (nonprecedential).

The Behrens affidavit, then, is not so much an argument for reconsideration based on "the discovery of new or different material evidence," so much as the setting for a new or more thoroughly informed argument claiming an intervening change in controlling legal authority. They cite *Duffie v.United States*, 600 F.3d 362 (5th Cir. 2010), *Jade Trading*, *Stobie Creek Inv. LLC v. United States*, 608 F.3d 1366 (Fed. Cir. 2010), *Henderson*, and *Tohono O'Odham* in this regard.

*Duffie*, however, is a non-binding decision of the Fifth Circuit which was issued even prior to the Federal Circuit's decision in *Prati III*. According to Plaintiffs, *Duffie* prescribes a particular *res judicata* analysis that must precede any finding that jurisdiction is barred by § 7422(h). The Federal Circuit, however, was clear: "Because the appellants' challenge to the penalty interest assessments is inherently a dispute over the proper characterization of the partnerships' transactions, that issue is barred by section 7422(h) from being litigated in the refund action before the Court of Federal Claims." *Prati III*, 603 F.3d at 1308. *Duffie* plainly does not suffice as grounds for reconsideration on the basis of a change in controlling legal authority. *Accord Boland v. United States*, Case No. 06-859 T, Order Denying Reconsideration (Court of Federal Claims, November 17, 2011).

*Jade Trading* and *Stobie Creek* are also unavailing. *Jade Trading*, like *Duffie*, was decided prior to the Federal Circuit's decision in *Prati III*. In *Jade Trading*, the Federal Circuit affirmed the trial court's finding that a partnership's "spread transaction" lacked economic substance but held that the trial court "lacked jurisdiction to review the application of penalties based on the outside bases of Jade's partners." *Jade Trading*, 598 F.3d at 1374. Plaintiffs cite *Jade Trading* and *Stobie Creek*, issued shortly after *Prati III*, as establishing certain jurisdictional limits regarding affected items in TEFRA partnership-level suits. They argue that these limitations in turn, under the res judicata analysis prescribed in *Duffie*, undercut the § 7422(h) bar to jurisdiction that the Federal Circuit affirmed in *Prati III*.

As noted by Defendant, however, the *Prati* plaintiffs raised the argument that *Prati III* conflicted with *Jade Trading* in their unsuccessful attempt to obtain a rehearing en banc and in seeking certiorari to the Supreme Court.  This court is not persuaded that either *Jade Trading* or *Stobie Creek* suffices for purposes of reconsideration as demonstrating a change in controlling legal authority.

The applicability of the Supreme Court decisions in *Henderson* and *Tohono O'Odham* in support of reconsideration here is even more tenuous.  *Henderson* addressed the question "whether a procedural rule is 'jurisdictional,'" in particular a 120-day deadline for filing a notice of appeal with the United States Court of Appeals for Veterans Claims.  *Henderson*, 131 S.Ct. 1202.  The Court's decision that the deadline there was not jurisdictional turned on its analysis of Congressional intent in the particular context of "review by an Article I tribunal as part of a unique administrative scheme."  *Id*. at 1204.  The outcome reflected "the solicitude of Congress for veterans."  *Id*. at 1205.  In light of the canon "'that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor,'" the Court noted, "we do not find any clear indication that the 120-day limit was intended to carry the harsh consequences that accompany the jurisdiction tag."  *Id*. at 1206.  The Martins' extrapolation of the decision and reasoning in *Henderson* to the TEFRA-related jurisdictional bar affirmed in *Prati III* is unconvincing.

In a similar vein, it is not evident that the decision in *Tohono O'Odham* regarding the unique context of 28 U.S.C. § 1500 has application to the TEFRA facts and claims of this AMCOR case.

IV. Conclusion

In the *Isler* Order of March 29, 2011, attached to his order in this case denying transfer, Judge Block wrote, "whatever merit plaintiffs' arguments may have regarding a conflict between the Federal Circuit's panel decisions in *Prati* and *Jade Trading*, these are arguments to be made to the Federal Circuit on appeal, once the taxpayer-specific claims are resolved and final judgment is reentered in these fourteen cases."  *Isler*, Docket No. 161 at 3 (March 29, 2011).

This court does not find that reconsideration is warranted, for the reasons reviewed above. Further, because the Martins have withdrawn their backdated assessment claims, see Docket No. 28, and because judgment has previously been entered in this case denying their limitations and penalty interest claims, the Clerk of Court is directed to enter final judgment accordingly and to dismiss this action.

 s/ Edward J. Damich  
EDWARD J. DAMICH
Judge